UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION
_____

CATHERINE KUHN, MYCHELLE CASEL, BRYAN
STROHM, SHAUN BOOKER, AND LESTER
ROGERS,

                Plaintiffs,

      v.

ASSET ACCEPTANCE CAPITAL CORP., ASSET
ACCEPTANCE LLC, ASSET ACCEPTANCE
RECOVERY SERVICES LLC, LEGAL RECOVERY
SOLUTIONS LLC, ENCORE CAPITAL GROUP INC.,
RION B. NEEDS, REID E. SIMPSON, DEBORAH L.
EVERLY, AAC QUAD-C INVESTORS LLC, QUAD-C
MANAGEMENT INC., HEARTLAND ADVISORS
INC., THE D3 FAMILY FUNDS LP, NIERENBERG
INVESTMENT MANAGEMENT CO., and JOHN
DOES 1-50.

                Defendants.

Case No. 1:14-CV-0059-TWP-
DML

_____

### HEARTLAND ADVISORS' BRIEF IN SUPPORT OF MOTION TO DISMISS

### I.      INTRODUCTION

      The Plaintiffs have filed a prolix, confusing, convoluted Complaint that lodges

allegations collectively against a group of thirteen defendants (plus fifty John Doe defendants).

The Complaint, without exception, entirely fails to identify the role of defendant Heartland

Advisors, Inc. ("Heartland") in any part of the alleged fraud, and fails to allege any plausible

grounds for the Court to assert personal jurisdiction over Heartland.  Further, the Complaint is

nearly identical to the complaint filed in this Court in *Cox v. Sherman Capital LLC*[1], which

_____

[1] 1:12-CV-01654-TWP, 2014 WL 1328147 (S.D. Ind. Mar. 31, 2014).  A copy of the complaint filed in *Cox* is
attached as Exhibit A for the Court's reference.

resulted in this Court's dismissal of all claims against all but five of the original sixty-five defendants, leaving only the direct participants in the alleged fraud and their parent corporations.

The fundamental shortcomings of the Complaint necessitate dismissal of all claims against Heartland.  First, and most fundamentally, the Plaintiffs have not pleaded a *prima facie* basis for this Court's personal jurisdiction over Heartland, nor does such jurisdiction exist. Second, the Plaintiffs fail to meet the particularity requirements of Rule 9(b) in alleging a common law fraud claim and RICO claims predicated on mail and wire fraud allegations.  Third, the Plaintiffs fail to state RICO claims against Heartland (or any other defendant) as a matter of law because, among other reasons, the Complaint does not identify a RICO enterprise.  Fourth, the Plaintiffs fail to state FDCPA claims against Heartland because they have not alleged that Heartland is a "debt collector" under that statute.  Finally, the Plaintiffs fail to allege unjust enrichment and restitution claims against Heartland because they have not identified any wrongdoing by Heartland.

The Complaint is rife with procedural and substantive legal deficiencies – most of which this Court already identified in *Cox*.  For the same reasons that the Court explained in *Cox*, and as further stated below, the Court should dismiss all claims against Heartland with prejudice.

## II.     ALLEGATIONS OF THE COMPLAINT

### A.  The Parties.

The Plaintiffs are five individuals who allege that all thirteen defendants (plus fifty unidentified John Doe defendants) collectively participated in a fraudulent scheme to illegally collect debts from the Plaintiffs.  (Compl. ¶ 1.)

At the heart of the alleged scheme are three defendants, Asset Acceptance LLC[2] ("Asset Acceptance"), Asset Acceptance Recovery Services LLC ("AARS"), and Legal Recovery Solutions LLC ("Legal Recovery").  Some combination of Asset Acceptance, AARS, and Legal Recovery allegedly engaged in an array of wrongful collections activities, including "impermissibly pulling credit reports, performing manual and automated outbound dialer calling activity, sending dunning letters, filing bankruptcy proof of claims, and filing lawsuits against Indiana residents."  (Compl. ¶ 2.)

The remaining defendants, it appears, are alleged participants in the fraudulent scheme only through their ownership of Asset Acceptance, AARS, and Legal Recovery, or their ownership of stock in the parent company of Asset Acceptance, AARS, and Legal Recovery.  In particular, Asset Acceptance, AARS, and Legal Recovery are allegedly wholly owned by defendant Asset Acceptance Capital Corporation ("AA Capital.")  (Compl. ¶¶ 20, 26.)  According to the Complaint, AA Capital was a publicly-traded corporation until July 2013, but is now a wholly-owned subsidiary of Encore Capital Group Inc. ("Encore").  (Compl. ¶ 20.)  Encore is a publicly-traded company.  (Compl. ¶ 19.)

Defendants Rion Needs, Reid Simpson, and Deborah Everly allegedly "own, manage, direct, operate, supervise, and oversee" all business entities related to the alleged fraudulent scheme.  (Compl. ¶ 21.)

Defendants AAC Quad-C Investors LLC, Quad-C Management, Inc., D3 Family Funds LP, Nierenberg Investment Management Co., and Heartland were allegedly "controlling stockholders of the Asset enterprise until June 2013 and received financial gain due to Asset's illegal enterprise and sale to Encore as stockholders of [AA Capital]."  (Compl. ¶ 28.)

---

[2] The preamble to the Complaint appears to define "Asset" as "Asset Acceptance LLC," but in the same paragraph defines "Asset" as all defendants collectively.  Despite the conflicting definitions, the Complaint appears to intend "Asset" to mean "Asset Acceptance LLC" throughout.

**B.  The Alleged "Scheme."**

The bulk of the Complaint revolves around the alleged collection activities of defendant Asset Acceptance.  According to the Complaint, Asset Acceptance performed the following activities:

- Collected debts of which it is not the owner.  (Compl. ¶ 50.)

- Impermissibly pulled credit report databases.  (Compl. ¶ 58.)

- Sued indebted consumers despite a lack of evidence of ownership of the debt.  (Compl. ¶¶ 59, 60.)

- Failed to obtain a "debt collection" license.  (Compl. ¶ 75.)

- Charged excessive prejudgment interest to consumers without contractual right.  (Compl. ¶ 104.)

Based on this alleged conduct, the Plaintiffs assert ten counts against the Defendants[3]: four counts under the Fair Debt Collection Practices Act (Compl. ¶¶ 71-119), a claim for common law fraud (Compl. ¶¶ 120-128), claims for restitution and unjust enrichment (Compl. ¶¶ 129-142), and three claims under RICO (Compl. ¶¶ 143-194.)

**C.  Allegations Regarding Heartland.**

Heartland is mentioned by name in the 194 paragraph Complaint once: in paragraph 28, the Complaint alleges that Heartland was among five "controlling stockholders of the Asset enterprise."  (Compl. ¶ 28.)  The preamble to the Complaint also includes Heartland in the defined term: "Majority Controlling Stockholders."  The Majority Controlling Stockholders are alleged:

- To have created an illegal consumer account enterprise.  (Compl. ¶ 145.)

---

[3] It is unclear whether the Complaint asserts all counts against all Defendants.  For example, Counts VIII-X state parenthetically that they are asserted "as to all Defendants."  Counts I-VII contain no such description.

- To have pulled the strings of Asset Acceptance, AARS, and Legal Recovery.  (Compl. ¶ 7.)

While the Complaint states numerous allegations about "all Defendants," there is no further mention of either Heartland or the "Majority Controlling Stockholders."

### D.  Heartland's public securities filings.[4]

Under the Securities Exchange Act and the regulations promulgated thereunder by the Securities and Exchange Commission, 48 Stat. 881–905, 15 U.S.C. chapter 2B, an entity that beneficially owns more than five percent of a share class of a publicly-traded company, such as AA Capital, is required to file either Schedule 13D or 13G ownership statements.  17 CFR § 240.13d-1.  Under the applicable regulations, an entity may file under Schedule 13G only if it acquired its securities in the ordinary course of business and "not with the purpose nor with the effect of changing or influencing the control of the issuer, nor in connection with or as a participant in any transaction having such purpose or effect."  17 CFR § 13d-1(b)(1)(i). Furthermore, the filer may not "directly or indirectly" own twenty percent or more of the class of shares.  17 CFR § 240.13d-1(c).  Companies eligible to file Schedule 13G, rather than Schedule 13D, therefore, are "passive investors."

On December 31, 2012, Heartland publicly filed its Schedule 13G in connection with its ownership of securities of AA Capital.  (Heartland's December 31, 2012 Schedule 13G is attached hereto as Exhibit B.)  This filing reflected Heartland's status as a passive, rather than controlling, investor.  (*See* Exhibit B.)  Further, Heartland's publicly-filed Schedule 13G reflects

---

[4] For purposes of a motion to dismiss, courts consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 51 U.S. 308, 322 (2007).  The Court may take judicial notice of public records, including stock prices, SEC filings and the undisputed facts contained in those reports.  *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008); *In re Brightpoint, Inc. Sec. Litig.*, No. IP99-0870-C, 2001 WL 395752, at *15, n.6 (S.D. Ind. Mar. 29, 2001).  Plaintiffs, furthermore, admit that they rely on AA Capital's SEC filings.  (*See* Compl. ¶ 55.)

that as of December 31, 2012, it owned 14.6% of AA Capital's common stock.  (*Id*.)  All of

Heartland's publicly-filed ownership statements under 17 CFR § 240.13d-1 were Schedule 13Gs,

rather than Schedule 13Ds.  (*See* Exhibits B-H.)

### III.    MOTION TO DISMISS STANDARD

To survive a motion to dismiss for failure to state a claim, Plaintiffs' allegations must

plausibly suggest an entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The

allegations in a complaint must "allo[w] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 668.

Further, "a formulaic recitation of the elements of a cause of action will not do."  *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2006).  A complaint that alleges only "'naked

assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss.

*Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).

When a complaint alleges fraud, the plaintiff must also satisfy the pleading requirements

of Federal Rule of Civil Procedure 9(b), which provides that fraud be pled with particularity.  In

order to plead fraud with particularity, a complaint must allege the who, what, when, where and

why of the alleged fraud.  Fed. R. Civ. P. 9(b).  Where, as here, the complaint attempts to allege

violations of RICO, the complaint is subject to FRCP 9(b)'s heightened pleading requirements.

*Goren v. New Vision Int'l*, 156 F.3d 721, 726 (7th Cir. 1998).  The complaint must, at a

minimum, describe the predicate acts of fraud supporting the RICO claim with specificity, and

state the time, place, and content of the alleged false representations, the method by which the

representations were communicated, and the identities of the parties to the representations.  *Id*. at

726, 728-29.

## IV.    ARGUMENT

### A.  This Court Lacks Personal Jurisdiction Over Heartland.

While there are many reasons the Court should dismiss the claims against Heartland because of the procedural and substantive shortcomings of the Complaint addressed below, as a threshold matter, all claims against Heartland should be dismissed because this Court lacks personal jurisdiction over Heartland.

The plaintiffs bear the burden of demonstrating personal jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).  In a case where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state.[5]  *See* Fed. R. Civ. P. 4(k)(l)(A); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).  Personal jurisdiction in Indiana courts is provided by Indiana's long arm statute, which states that "a court of [Indiana] may exercise jurisdiction on any basis not inconsistent with the Constitutions of [Indiana] or the United States."  Ind. Trial R. 4.4(a). Accordingly, the Court can only exercise personal jurisdiction over Defendants up to the constitutional limits of the Due Process Clause of the Fourteenth Amendment. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 966-67 (Ind. 2006).

In order for the Court to assert personal jurisdiction, a defendant must have purposefully established minimum contacts with the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985).  The crucial inquiry is whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being haled into court there.  *Id.*  To exercise specific personal jurisdiction, the plaintiff's cause of action must arise out of or be

---

[5] While the RICO statute provides personal jurisdiction based on nationwide service of process, 18 U.S.C. § 1965(b), there is no viable RICO claim asserted against Heartland. *See infra* § II.B.  For this reason, RICO does not provide a basis for jurisdiction over Heartland.  *See Cox v. Sherman Capital LLC*, 1:12-CV-01654-TWP, 2014 WL 1328147, at *3 n.2 (S.D. Ind. Mar. 31, 2014).

related to these minimum contacts that sufficiently comport with fairness and justice.  *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).  Plaintiffs do not allege that Heartland had any jurisdictional contacts whatsoever, and certainly not that this action arose out of any of Heartland's jurisdictional contacts.

A court may also exercise general personal jurisdiction over a defendant "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 317 (1945)).  The Plaintiffs do not allege any jurisdictional facts that provide the Court with a factual basis to constitute general jurisdiction.

In fact, the only jurisdictional allegation in the Complaint that conceivably relates to Heartland (aside from the Plaintiffs' legally deficient RICO claims) is that the Court "has personal jurisdiction upon 'veil piercing' and/or 'alter ego' theories." (Compl. ¶ 13.)  However, as this Court concluded in *Cox,* the jurisdictional contacts of the various Asset entities are not imputable to Heartland.  *See Cox v. Sherman Capital LLC*, 1:12-CV-01654-TWP, 2014 WL 1328147, at *3 (S.D. Ind. Mar. 31, 2014).  In order to impute jurisdictional contacts to a defendant company based on its ownership interest in another company, there must be an "unusually high degree of control" or the "subsidiary's corporate existence is simply a formality."  *Abelesz v. OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012).  Ownership in a company is not a sufficient basis to impute jurisdictional contacts from the company to the owner.  *Cent. States, Se. & Sw. Areas Pension Fund*, 230 F.3d at 943.

As these cases indicate, it is rare for a court to exercise personal jurisdiction over a parent corporation based on the jurisdictional contacts of its subsidiary companies.  *See IDS Life Ins.*

8

*Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent.")  But even a parent-subsidiary relationship would be far more substantial than Heartland's connection to the forum jurisdiction, or to any of the other defendants, in this case.  Heartland was never the parent corporation of any of the defendants in this case, nor does the Complaint allege otherwise. Rather, Plaintiffs allege only that Heartland was one among *five* "Majority Controlling Stockholders" of AA Capital, a publicly-traded company[6].  The five alleged "Majority Controlling Stockholders" are unaffiliated entities with different places of business.  Indeed, as of December 31, 2012, at the time the Plaintiffs allege that Heartland was a "controlling stockholder," Heartland owned just 14.6% of AA Capital's common stock, and publicly filed a Schedule 13G as required for passive investors.  (*See* Exhibit B.)  Further, just prior to AA Capital's sale to Encore in 2013, Heartland owned a mere 2% of AA Capital. (*See* Exhibit H.)

     If it is difficult to establish personal jurisdiction of a parent corporation based on the contacts of a *wholly-owned* subsidiary, it would be unprecedented to find personal jurisdiction over a minority shareholder based on the jurisdictional contacts of a publicly-traded corporation. Indeed, Heartland's research has uncovered no case in which the jurisdictional contacts of a publicly-traded corporation were imputed to *any* shareholder, let alone a minority shareholder.  It is difficult to imagine a scenario where a single shareholder could exert an "unusually high degree of control" over a publicly-traded corporation, comparable to the level of control a parent corporation could exert over a wholly-owned subsidiary.  Nor is it conceivable that a publicly-traded corporation, subject to the rigorous regulatory demands and public filings requirements

---

[6] It should not be disregarded that the concept that there were not one but five majority stockholders is absurd on its face.  A "majority" is "[a] number that is more than half of a total; a group of more than 50 percent." Black's Law Dictionary (9th ed. 2009).  Obviously, five separate entities cannot all be majority stockholders – nor is there any allegation that the "majority controlling stockholders" somehow pooled their interests and acted in concert.

demanded by state and federal securities laws and agencies, could be deemed "simply a formality." Such a far-fetched scenario does not exist in this case, nor is it pleaded by the Plaintiffs in the Complaint.

The Plaintiffs have alleged that personal jurisdiction over Heartland exists based on a theory – and on allegations – that are even flimsier than those that were rejected by this Court in *Cox*. To assert personal jurisdiction over Heartland in this case would be to allow jurisdiction over any shareholder of a company anywhere that company does business: in other words, it would eviscerate the Constitutional protections afforded by *Burger King* and its progeny. For these reasons, all claims against Heartland should be dismissed with prejudice[7].

### B.  Plaintiffs Fail to Adequately Plead RICO or Fraud Claims.

Plaintiffs' scattershot Complaint fails to adequately plead RICO or fraud claims for a number of reasons. Ultimately, the RICO and fraud claims against Heartland should be dismissed both because (1) the Complaint fails to provide notice to Heartland of the wrongdoing alleged against it as required by Rule 9(b), and (2) because the Complaint fails to state a RICO claim.

### 1. Plaintiffs fail to plead fraud and RICO with particularity.

As an initial matter, the Complaint fails to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure because it makes collective allegations about all of the defendants in the aggregate rather than addressing the roles played by any of the individual defendants. Thus, the Complaint fails to inform Heartland (or any other defendant) of the nature of its alleged participation in the fraud. The Seventh Circuit has previously rejected such

---

[7] Further, the Plaintiffs should not be permitted to conduct discovery related to Heartland's jurisdictional contacts. *See Central States, Se. and Sw. Areas Pension Fund*, 230 F.3d at 946 ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."). For the reasons described, the Plaintiffs have not made a prima facie showing of personal jurisdiction.

complaints where multiple defendants are "lumped together." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994); *see also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (complaint properly dismissed with prejudice where "complaint lump[ed] all the defendants together and [did] not specify who was involved with what activity."). This Court correctly noted in *Cox* that the plaintiffs in that case, by stating allegations against defendants in the aggregate and failing to identify any acts by any particular defendant, failed to adequately allege participation in the alleged fraudulent scheme. 2014 WL 1328147, at *5-*6. Here, Plaintiffs make no allegation that Heartland individually participated in any fraud. Instead, Plaintiffs blithely allege that all defendants participated in a fraudulent scheme. Such collective allegations are inadequate under Rule 9(b).

The Complaint also failed to plead with particularity the predicate elements of RICO. The particularity requirement of Rule 9(b) applies to civil RICO claims where the predicate acts are mail or wire fraud, as they are here. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999). In a RICO action, "the complaint must, at a minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). Here, Plaintiffs allege collective allegations against all of the defendants but fail to allege any communications or conduct of Heartland constituting mail or wire fraud. Likewise, the Plaintiffs fail to identify the "time, place, and content" of the alleged communications that constitute the fraud. In other words, the Complaint fails to identify any conduct of Heartland *whatsoever* that allegedly constitutes fraud, and it also fails to identify any conduct of any other party *with particularity* that allegedly constitutes fraud. Both omissions require the dismissal of the RICO claims against Heartland.

Plaintiffs' common law fraud claim against Heartland fails for the same reason.  Under Indiana law, the plaintiff must plead five elements to successfully allege common law fraud: "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Kesling v. Kesling*, 546 F. Supp. 2d 627, 638 (N.D. Ind. 2008). Under Rule 9(b), the plaintiff must allege the "who, what, when, and where of the alleged fraud" in order to survive a motion to dismiss. *Lachmund*, 191 F.3d at 782 (citations omitted).  Here, Plaintiffs have alleged only collective allegations that the defendants made misrepresentations and participated in a fraudulent scheme to collect money.  The Complaint fails to identify – let alone identify with specificity – any fraudulent act or communication of Heartland.

The Complaint utterly fails to give Heartland notice of the nature of the claims asserted against it: the very purpose underlying Rule 9(b).  As a result, the Plaintiffs' fraud and RICO claims against Heartland should be dismissed.

### 2. Plaintiffs fail to plead that Heartland is vicariously liable for the conduct of another party or as an alter ego of another entity.

Plaintiffs fail to assert allegations sufficient to establish that Heartland is liable either as an alter ego of another entity (under a piercing the corporate veil theory) or as a principal of another entity (under a vicarious liability or agency theory).  Fraud or RICO claims that are based on an alleged agency relationship are subject to Rule 9(b).  Veil piercing allegations are not subject to Rule 9(b), but must still be pled on the basis of plausible facts.  Plaintiffs fail to meet either bar.

The Complaint does not even expressly allege that Heartland is an alter ego of any other entity, nor that the veil of another Asset entity could be pierced to reach Heartland.  However,

the Complaint alleges that "[e]ach Individual Defendant[] is a 'debt collector' since the Asset corporate veil can be pierced," (Compl. ¶ 87), and that the Court has personal jurisdiction "upon 'veil piercing' and/or 'alter ego' theories." (Compl. ¶ 13.) The Complaint alleges nothing else in support of piercing the corporate veil.

In order to state a claim for liability resulting from a piercing the veil theory, Plaintiffs are required to sufficiently plead the substantive veil piercing factors in order to plead a veil piercing claim. *NNDYM IN, Inc. v. UV Imports, Inc.*, No. 3:09–CV–129–TWP–WGH, 2011 WL 5238824 (S.D. Ind. Nov. 1, 2011). Courts within the Seventh Circuit routinely dismiss complaints for failure to plead plausible facts in support of the alter ego doctrine. *See, e.g., RehabCare Grp. E., Inc. v. Certified Health Mgmt., Inc.*, 07 C 2923, 2007 WL 3334500 (N.D. Ill. Nov. 8, 2007) (dismissal because plaintiff failed to plead elements of alter ego theory); *Source One Global Partners, LLC v. KGK Synergize, Inc.*, 08 C 7403, 2009 WL 2192791 (N.D. Ill. July 21, 2009) (dismissal for failure to make plausible case for piercing the corporate veil).

Under Indiana law, the corporate veil may only be pierced when "the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001) (*citing Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994)). Courts must balance eight factors including: (1) undercapitalization, (2) absence of corporate records, (3) fraudulent representation by corporation shareholders or directors, (4) use of the corporation to promote fraud, injustice or illegal activities, (5) payment by the corporation of individual obligations, (6) commingling of assets and affairs, (7) failure to observe required corporate formalities, and (8) other shareholder acts or conduct ignoring, controlling or manipulating the corporate form. *Id.* n.3. The Complaint

does not allege any of these factors. In fact, the Complaint does not even allege exactly *whose* corporate veil should be pierced. Accordingly, the Plaintiffs' claims against Heartland cannot be sustained on the basis of piercing the corporate veil.

When fraud allegations are predicated on an agency relationship, moreover, the facts comprising agency must be pleaded with particularity. *See Am. Credit Indem. Co. v. HCG Fin. Servs., Inc.*, 89 C 9583, 1990 WL 77992 (N.D. Ill. June 1, 1990) (dismissing fraud claims alleging that fraudulent acts were undertaken at the "direction and control" of defendants who acted in a "common scheme" with their agents); *Lachmund*, 191 F.3d at 783. Heartland's relationship to any of the other defendants in this case falls far short of an agency relationship under well-established Seventh Circuit law. *See Carlisle v. Deere & Co.*, 576 F.3d 649, 656 (7th Cir. 2009) (existence of agency relationship hinges on "[t]he principal's control over the purported agent's day-to-day operations."). The Plaintiffs fail to allege any facts whatsoever that could plausibly form the basis for an agency relationship between Heartland and any other entity. The Plaintiffs do not allege with specificity that Heartland exerted control over any entity's day-to-day operations, nor even that Heartland had any sort of agreement or communications with *any* of the other defendants, outside of the fact that it was a stockholder of AA Capital. The Plaintiffs' single conclusory allegation that Heartland was a "controlling stockholder," unsupported by any other allegations in the Complaint, is not sufficient to satisfy Rule 9(b).

Indeed, Heartland was never a "controlling shareholder." Rather it is and always was a passive investor in AA Capital, as evidenced by its Schedule 13G filings. (*See* Exhibits B-H.) For the reporting periods during which Heartland owned more than five percent of AA Capital, Heartland properly filed its ownership statements under Schedule 13G because it acquired AA Capital in the ordinary course of business and without the purpose or effect of changing or

influencing the control of AA Capital.  Indeed, the Complaint makes no allegations that Heartland asserted any "control."  Heartland, accordingly, is not a controlling shareholder.

The Complaint alleges no facts that could plausibly give rise to either Heartland's vicarious liability for the conduct of a purported agent, nor any facts that could lead to piercing the corporate veil of another entity to reach Heartland.  Accordingly, the fraud and RICO claims against Heartland must be dismissed.

### 3. The Complaint fails to state a claim under RICO as a matter of law.

Even disregarding the Plaintiffs' failure to meet Rule 9(b)'s particularity requirement in alleging RICO claims against Heartland, the RICO claims fail as a matter of law.

First, the Plaintiffs have failed to allege an enterprise separate and apart from the Defendants.  To state a plausible claim under RICO, the Plaintiffs must identify a RICO enterprise that is separate from the entities or individuals who allegedly violated RICO.  *See Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990) (*quoting Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1136 (7th Cir. 1986)).  But here, the Plaintiffs have not alleged that any of the defendants – and certainly not Heartland – "infiltrated, took over, manipulated, disrupted, or suborned a distinct entity, or alleged a distinct association in fact."  *See Cox v. Sherman Capital LLC*, 1:12-CV-01654-TWP, 2014 WL 1328147, at *5 n.5 (S.D. Ind. Mar. 31, 2014); *Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO."); *Pena v. Int'l Union of Operating Eng'rs, Local 150, AFL–CIO*, No. 08 C 4222, 2009 WL 2177239, at *4 (N.D. Ill. July 21, 2009) ("When a plaintiff seeks to hold a group of RICO persons liable, and that group is identical to the group making up the alleged enterprise, the RICO claim fails because the persons are not distinct from the enterprise.").  In this case, the Plaintiffs merely allege that all of the

Defendants collectively made up a "collection enterprise."  (Compl. ¶¶ 19, 126, 145, 167.)  Here the Plaintiffs fail to identify a RICO enterprise[8]; for this reason alone, all three RICO claims against Heartland fail as a matter of law.

Second, RICO claims under Section 1962(b) require that the object of the predicate racketeering activity itself be to gain an interest in or control of the particular enterprise and that the injury alleged be directly related to the Defendants' acquisition of an interest in the enterprise.  *Hexagon Packaging Corp. v. Manny Gutterman & Associates, Inc.*, No. 96 C 4356, 1997 WL 323501 (N.D. Ill. June 6, 1997); *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007).  In support of its 1962(b) claim, however, the Complaint merely alleges that the defendants created an "enterprise" that committed two or more predicate acts, not that the defendants engaged in racketeering activity *in order* to gain an interest or control in an enterprise, nor that the Defendants' acquisition of an interest in the enterprise caused injury to the Plaintiffs.  Thus, the Plaintiffs fail to allege a claim against Heartland under Section 1962(b).

Third, the Plaintiffs fail to allege a conspiracy claim under § 1962(d) because they have not alleged the existence of any agreement.  *See Cox v. Sherman Capital LLC*, 1:12-CV-01654-TWP, 2014 WL 1328147, at *5 n.5 (S.D. Ind. Mar. 31, 2014); *Lachmund*, 191 F.3d at 785 (Plaintiff must plead "facts indicating an act of agreement among the alleged conspirators or what roles the various defendants would play in the conspiracy.").  Like the Plaintiffs in *Cox*, the Plaintiffs here have merely alleged that all of the Defendants formed a "collection enterprise," but have failed to allege the existence of any agreement.  Like the Complaint in *Cox*, Plaintiffs' conspiracy claim fails as a matter of law.

---

[8] Even if the Plaintiffs had adequately pleaded the existence of a separate RICO enterprise, the RICO claims would be deficient because their generic allegations do not establish the continuity of racketeering activity necessary to allege a "pattern."  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985).

In summary, Plaintiffs have not only failed to plead their RICO claims with particularity, but they have failed to adequately plead RICO claims as a matter of law.  The RICO claims against Heartland must be dismissed.

### C.   Plaintiffs Fail to State a Claim Under the Fair Debt Collection Practices Act.

The Plaintiffs similarly fail to state a claim against Heartland under the Fair Debt Collection Practices Act ("FDCPA").  As an initial matter, the Plaintiffs fail to identify Heartland or even the "Majority Controlling Stockholders" in any of its FDCPA allegations; for this reason alone, the FDCPA claims against Heartland (to the extent they exist) should be dismissed. Further, the Plaintiffs' allegations under the FDCPA in this case are substantially identical to the allegations stated by the plaintiffs in *Cox*.  Like in *Cox*, the FDCPA claims against Heartland should be dismissed.

First, the Plaintiffs allege in Counts I and II that the Defendants violated the FDCPA solely by virtue of "Asset's failure to obtain a collection agency license" as mandated by Indiana law.  (Compl. ¶¶ 75, 95.)  These allegations are substantially identical to the allegations dismissed by this Court in *Cox*.  As the Court noted in that case, alleged violations of the Indiana Collection Agency Act cannot form the basis for an FDCPA claim under Section 1692e.  *Cox*, 2014 WL 1328147, at *7; *see also Fausset v. Mortgage First, LLC*, No. 4:09–CV–42–PRC, 2010 WL 987169, at *4 (N.D. Ind. Mar.12, 2010) ("Section 1962e does not incorporate state licensing requirements.... Thus, an alleged violation of state or local law is insufficient to state a claim under the FDCPA.").  For the same reasons this Court identified in *Cox*, Counts I and II must be dismissed.

Second, the Plaintiffs allege in Counts III and IV that the Defendants violated FDCPA because "Asset illegally charges excessive prejudgment interest to consumers without

contractual right" and for collecting a debt without legal ownership.  (Compl. ¶¶ 104, 119.)
These counts fail because Heartland is not a "debt collector" under the FDCPA.  The FDCPA
defines a debt collector as "any person who uses any instrumentality of interstate commerce or
the mails the principal purpose of which is the collection of any debts, or who regularly collects
or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due to
another." 15 U.S.C. § 1692a(6).

       In *Cox*, the Court found that the plaintiffs adequately pleaded that the "Entity
Defendants" were debt collectors because they alleged the Entity Defendants indirectly collected
or attempted to collect debts owed by unaffiliated entities and that they "pulled the strings" of
the actual debt collectors.  *Cox*, 2014 WL 1328147, at *8-9.  In *Cox*, however, the Court only
addressed whether certain defendants (the Entity Defendants) over whom the Court had personal
jurisdiction were debt collectors.  Those Entity Defendants – Sherman Originator LLC, Sherman
Financial Group LLC, and Sherman Capital LLC – were the parent companies of the companies
that actually served as the debt collectors.  As a result of their direct ownership in those debt
collectors, the Court found that the plaintiffs adequately pleaded that the Entity Defendants could
be held liable as indirect debt collectors.

       In contrast, here, Heartland's only connection to the actual debt collectors was as a
minority shareholder of AA Capital, which in turn was the parent company of the debt collectors,
Asset Acceptance, AARS, and Legal Recovery.  (*See* Exhibits B–H.)  Heartland never had any
ownership interest in either Asset Acceptance, AARS, or Legal Recovery, nor does the
Complaint allege otherwise.  Thus, while in *Cox* the Entity Defendants were parent companies of
the debt collectors, Heartland only had a minority ownership interest in a publicly-traded
company, AA Capital, which itself was the parent company of the debt collectors.  As a result,

the Plaintiffs fail to plausibly allege that Heartland was either a direct or indirect debt collector. All FDCPA claims against Heartland, accordingly, must be dismissed.

### D.  Plaintiffs Fail to Allege Unjust Enrichment and Restitution Claims.

As an initial matter, Plaintiffs fail to identify either Heartland or the "Majority Controlling Stockholders" in its restitution and unjust enrichment claims.  Thus, the Complaint fails to provide notice to Heartland whether it is even subject to these claims.  For this reason alone, the restitution and unjust enrichment claims (to the extent they exist against Heartland) should be dismissed.

Plaintiffs' claims for restitution and unjust enrichment also fail because Defendants were not unjustly enriched.  A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to permit a recovery ... where the circumstances are such that under the law of natural and immutable justice there should be a recovery ...."  *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind. 1991) (citation omitted).  "A person who has been unjustly enriched at the expense of another is required to make restitution to the other."  *Zoeller v. E. Chicago Second Century, Inc.,* 904 N.E.2d 213, 220 (Ind. 2009) (quoting Restatement of Restitution § 1 (1937)).

Thus, to adequately plead a claim of unjust enrichment, a plaintiff must allege that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.  *Id.*

The Plaintiffs' claims for restitution and unjust enrichment must be dismissed because the Plaintiffs have not alleged that Heartland committed any wrongful or unjust act.  *See Savoree v. Indus. Contracting & Erecting, Inc.,* 789 N.E.2d 1013, 1020 (Ind. Ct. App. 2003) ("The pivotal concept of 'unjust enrichment' is the occurrence of a wrong or something unjust.").  Here, the Plaintiffs' restitution and unjust enrichment claims rely on the same generic allegations that the Plaintiffs rely on to support their other claims.  Because Plaintiffs' other claims against Heartland are legally deficient, Plaintiffs' claims for restitution and unjust enrichment must be dismissed, too.

## V.    CONCLUSION

For the reasons stated above, all claims against Heartland should be dismissed with prejudice.

Dated this 5th day of May, 2014.

Respectfully submitted,


s/ Jason R. Barclay
Larry A. Mackey
Jason R. Barclay
Brian Weir-Harden
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: 317-231-7250
Facsimile: 317-231-7433
Email: jbarclay@btlaw.com

Attorneys for Defendant
Heartland Advisors Inc.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the foregoing was served on all

counsel of record via the Court's electronic filing service on this 5th day of May, 2014

s/ Jason R. Barclay
Jason R. Barclay