UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CATHERINE KUHN, MYCHELLE CASEL, BRYAN STROHM, SHAUN BOOKER, and LESTER ROGERS<br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>ASSET ACCEPTANCE CAPITAL CORP., ASSET ACCEPTANCE, LLC, ASSET ACCEPTANCE RECOVERY SERVICES, LLC, LEGAL RECOVERY SOLUTIONS, LLC, ENCORE CAPITAL GROUP, INC., JOHN DOES 1-50,<br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:14-cv-00059-TWP-DML<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ENTRY ON MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss filed by Defendants, Asset Acceptance Capital Corp. ("AACC"), Asset Acceptance LLC ("Asset Acceptance"), Asset Acceptance Recovery Services LLC ("AARS"), Legal Recovery Solutions LLC ("LRS"), and Encore Capital Group Inc. ("Encore") (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted (Filing No. 61). Plaintiffs Catherine Kuhn ("Ms. Kuhn"), Mychelle Casel ("Ms. Casel"), Bryan Strohm ("Mr. Strohm"), Shaun Booker ("Mr. Booker"), and Lester Rogers ("Mr. Rogers") (collectively, "Plaintiffs") assert claims against Defendants for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the United States Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. §§ 1961, 1962(c) and (d), and 1964(a) and (c) ("RICO"), and fraud, restitution, and unjust enrichment under Indiana

law. For the reasons set forth below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

The following facts are accepted as true for purposes of this Motion to Dismiss. Plaintiffs allege that Defendants have engaged in a scheme to manipulate consumers to pay money on alleged debt obligations that are not owed to Asset Acceptance, and that Asset Acceptance has wrongfully collected from Indiana consumers tens of millions of dollars. Plaintiffs seek to represent themselves and all other similarly situated consumers in this proposed class action.

Asset Acceptance buys data reflecting consumers' past credit card activity and nonpublic personal information. However, Plaintiffs allege that Asset Acceptance does not actually acquire legal ownership of the consumers' debt obligations, but only owns information about these debt obligations. Asset Acceptance purchases data about Indiana charged-off consumer credit card accounts, and Defendants, through Asset Acceptance or its agents, then improperly collect money from Indiana consumers on the information contained in the data for a fee. Plaintiffs allege that Defendants falsely represent that Asset Acceptance has the absolute right to collect money, including pre-purchase interest. This is accomplished through the means of alleged fraudulent collection activities, including pulling credit reports, performing manual and automated outbound dialer calling activity, sending dunning letters, and filing lawsuits against Indiana residents, even though Asset Acceptance has no legal ownership of the underlying debts.

Encore is a Delaware corporation which owns, controls, and employs AACC and its subsidiaries, Asset Acceptance, AARS, and LRS. Encore is primarily engaged in the business of purchasing, and collecting on, data concerning information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits. Encore has entered into a management

and servicing contract with AACC to operate and manage AACC's wholly-owned subsidiaries as a standalone company. Through its ownership, control and employment of its subsidiaries, AACC is primarily engaged in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts. From January 2006 through the end of December 2012, AACC invested approximately $1 billion in the acquisition of charged-off accounts.

     Asset Acceptance is a wholly owned subsidiary of AACC. Asset Acceptance serves as the purchasing vehicle of the consumer data, as well as the servicer of the data. AARS is also a wholly-owned subsidiary of AACC. AARS's sole purpose is to manage Defendants' network of collection law firms and provide legal collection management services to Asset Acceptance. LRS, another wholly-owned subsidiary of AACC, is the holding vehicle of the data purchased by Asset Acceptance. LRS is a software technology company which manages the data inventory in both traditional collections and litigation. Subcontractors of Defendants, consisting of law firms and collection agencies, enter into Collection Services Agreements with Defendants and assist in performing the collection activities on behalf of the Defendants.

     Plaintiffs each allege that they were subjected to Defendants' allegedly fraudulent collection scheme. Ms. Kuhn alleges that she was subjected to Defendants' illegal collection activities concerning an alleged Fifth Third Bank credit card debt. She was sued by Asset Acceptance and was forced to hire legal counsel to contest the collection activity. Ms. Casel was subjected to collection activities concerning an alleged Capital One Bank NA credit card debt. Despite paying off the Capital One account in 2004, Asset Acceptance appears on Ms. Casel's credit report and she had to hire legal counsel to contest the unlawful collection activity. Mr. Strohm alleged he was subjected to collection activities concerning an alleged First USA/Chase Bank NA and a BP/Chase Bank NA credit card account. He received collection letters and

telephone calls from Asset Acceptance and its agents, and was forced to hire legal counsel to contest the unlawful collection activity.  Mr. Booker was subjected to collection activities by Asset Acceptance and its agents concerning an alleged First USA/Chase Bank USA NA credit card account, and was sued by Asset Acceptance.  Mr. Rogers alleges he was subjected to collection activities concerning an alleged HH Gregg/GE Money Bank credit card account and Asset Acceptance appears as the creditor on his credit report.

Plaintiffs allege that the credit card receivables that Defendants sought to collect upon had previously been securitized by the originating banks, charged off, and "insured" by credit enhancements, which thereby eliminated the underlying debt obligations and are not collectable.  However, banking and securities regulations do not prohibit the sale of information/data about the defaulted receivables, which is what Defendants allegedly purchase.  Plaintiffs assert that the Bill of Sale and Purchase Agreements for the receivable specifically limit the sale to the originating bank's interest in the receivable, which after securitization and credit enhancements is solely the data, not ownership of the receivable.  Therefore, Plaintiffs allege, Defendants have no legal right to collect money based upon this information, because the banking regulations would prohibit the originating banks from collecting on these securitized and charged-off receivables.

Plaintiffs also allege that Defendants subsequently added interest to the amounts allegedly owed, despite the originating bank's waiver of the collection of interest.  Furthermore, Plaintiffs claim that the amounts of interest allegedly owed to Asset Acceptance, when calculated at the stated interest rates, would necessarily have to be calculated as of a date prior to Asset Acceptance's alleged purchase of the account.  Plaintiffs allege that Defendants engaged in mail and wire fraud, interstate transportation of stolen property, and extortion in furtherance of their collection scheme against the alleged debtors.

## II. LEGAL STANDARD

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially *plausible*, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III. DISCUSSION

### A. Count I: Failure to Own the Debt in Violation of FDCPA

Count I of Plaintiffs' Amended Complaint asserts that Defendants violated the FDCPA because Asset Acceptance does not legally own the debts sought to be collected from the Plaintiffs, which is in violation of 15 U.S.C. §§ 1692e and 1962f. Defendants argue that this count must be dismissed because it relies upon the "faulty and unsupported premise that Asset only owned Plaintiffs' data." (Filing No. 62, at ECF p. 13.) Defendants argue "[i]f Plaintiffs' theory were true, then it would render an important wheel in the financial system obsolete." (Filing No. 62, at ECF p. 13.) However, this argument ignores that, on a motion to dismiss, that is precisely the standard the Court must adhere to, and the Plaintiffs' facts must be presumed to be true for purposes of the motion. Defendants argue the merits of Plaintiffs' claims, not the sufficiency of

their Amended Complaint. By alleging that Asset Acceptance did not actually own the Plaintiffs' debts, Plaintiffs have adequately stated a claim alleging that Defendants violated §§ 1692e and 1692f of the FDCPA. *See Cox v. Sherman Capital LLC et al.*, No. 1:12-cv-01654-TWP-MJD, 2014 WL 1328147, *9 (S.D. Ind. March 31, 2014). Therefore, the motion to dismiss Count I is **DENIED**.

**B.     Count II:  Failure to Obtain a Debt Collection License in Violation of FDCPA**

Count II of Plaintiffs' Amended Complaint alleges that Defendants violated the FDCPA by failing to obtain a debt collection license as mandated by Ind. Code § 25-11-1-7. Ind. Code § 25-11-1-7 provides "[i]t is unlawful for any person to conduct, within this state, a collection agency without first having applied for and obtained a license. . . ." Ind. Code Ann. § 25-11-1-7(a). Regardless of whether the Indiana Collection Agency Act ("ICAA") does or does not apply to Defendants, Plaintiffs may not use the FDCPA to enforce a state licensing requirement. "Section 1691e does not incorporate state licensing requirements . . . . Thus, an alleged violation of state or local law is insufficient to state a claim under the FDCPA." *Cox*, 2014 WL 1328147, at *7 (quoting *Fausett v. Mortgage First, LLC*, No. 4:09-CF-42-PRC, 2010 WL 987169, at *4 (N.D. Ind. Mar. 12, 2010) (additional citations omitted). The Court declines to follow the authority from outside of this circuit cited by Plaintiffs to hold otherwise. Therefore, the Court finds that the failure to obtain a license under the ICAA does not state a claim for violation of §§ 1692e and 1692f of the FDCPA. Defendants' motion to dismiss on Count II is **GRANTED**.

**C.     Count III: Charging Pre-Purchase Interest**

Count III of Plaintiffs' Amended Complaint alleges a violation of the FDCPA based upon Defendants charging of pre-purchase interest on the Plaintiffs' alleged debts. Defendants argue that these claims asserted by Ms. Kuhn, Ms. Casel, and Mr. Strohm are barred by the statute of

limitations; Mr. Booker's claims are barred because he does not allege any interest was sought to be collected; and that Plaintiffs' factual allegations in general do not state a claim under the FDCPA.

First, with respect to all Plaintiffs, Defendants argue that the allegations that Defendants charged them pre-purchase interest fails to state a claim because it "rests upon the incorrect premise that the original creditors . . . waived their right to seek interest from plaintiffs." (Filing No. 62, at ECF p. 20). Again, Defendants ignore that the Court must accept Plaintiffs' allegations in their Amended Complaint as true, and thus must accept the factual allegations that the assignors waived the right to add interest. (Filing No. 57, at ECF p. 42.) Defendants' argument that Plaintiffs "baldly allege" these facts is irrelevant at the motion to dismiss stage, and Plaintiffs need not prove the facts alleged in the complaint at this point in the litigation.

Contrary to Defendants' arguments, nowhere in Count III of the Amended Complaint do Plaintiffs allege that Defendants violated the FDCPA by failing to send periodic statements. Rather, Plaintiffs allege that the assignors' failure to send periodic statements supports their factual assertion that the assignors waived their right to collect interest. Therefore, the Court concludes that Plaintiffs' factual assertions adequately state a claim under the FDCPA in Count III. *See Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 542 (N.D. Ill. 2012) (factual allegations that creditor waived collection of interest prior to assignment stated a claim under the FDCPA).

Second, with respect to Defendants' statute of limitations argument, Defendants argue that Ms. Kuhn, Ms. Casel and Mr. Strohm have pled themselves out of court. Claims under the FDCPA are subject to a one-year statute of limitations period which begins to run on the date of the violation of the statute. 15 U.S.C. § 1692k(d). The Amended Complaint alleges that Asset

Acceptance falsely reported Ms. Kuhn's account to the consumer credit reporting agencies on or about August 17, 2011. (Filing No. 57, at ECF p. 15.) Ms. Casel's account was alleged to have been falsely reported to the credit bureaus in June 2009. (Filing No. 57, at ECF p. 16.) Mr. Strohm's account was alleged to have been reported to the credit bureaus in November 2008. (Filing No. 57, at ECF p. 17.) Plaintiffs provide no argument in response to Defendants' motion on this issue, nor are there any allegations in the Amended Complaint that the statue should be tolled for these Plaintiffs. Because Plaintiffs allege Ms. Kuhn, Ms. Casel, and Mr. Strohm each have claims that accrued more than one year prior to the commencement of this action, the Court finds that the expiration of the statute of limitations is clear from the face of the Amended Complaint, and are therefore barred as untimely. *See Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009) ("[D]ismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness.").

Finally, Defendants argue that Mr. Booker does not have standing to assert a claim under Count III because he does not allege that any pre-purchase interest was sought to be collected from him. The Amended Complaint only states that Asset Acceptance filed a lawsuit against Mr. Booker alleging that he was indebted in the amount of $7,402.96 "plus interest." (Filing No. 57, at ECF p. 20.) There are no allegations that this amount included interest that pre-dated Asset Acceptance's purported ownership of his account, and Plaintiffs do not respond to Defendants' argument that Mr. Booker lacks standing. Because the Amended Complaint fails to allege facts showing that Mr. Booker was charged pre-purchase interest by Asset Acceptance, Mr. Booker may not assert the FDCPA claims in Count III against Defendants.

The Court finds that the allegations that Defendants charged pre-purchase interest against debtors does state a claim under the FDCPA. However, because the statute of limitations bars the

claims asserted by Ms. Kuhn, Ms. Casel, and Mr. Strohm, and because Mr. Booker has not alleged facts showing he has standing to assert such a claim, the motion to dismiss Count III asserted by Ms. Kuhn, Ms. Casel, Mr. Strohm, and Mr. Booker is **GRANTED**. The motion to dismiss the claim under Count III as to the remaining plaintiff, Mr. Rogers, is **DENIED**.

**D.  Counts IV and V: RICO and RICO Conspiracy**

Count IV of Plaintiffs' Amended Complaint asserts a civil RICO claim, alleging that Defendants AACC, Asset Acceptance, AARS, LRS, and Encore engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c) for the purpose of defrauding the plaintiff class members of money and property. In the alternative, Count V asserts a RICO conspiracy claim, alleging that Defendants AACC, Asset Acceptance, AARS, LRS, and Encore are liable as conspirators under 18 U.S.C. 1962(d).

**1.  RICO**

In order to state a claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. . . . . Predicate acts are acts indictable under a specified list of criminal laws . . . including mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343." *Id.* (citing 18 U.S.C. § 1961). Defendants argue that Plaintiffs have not alleged an enterprise separate and apart from Defendants, and have not met the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).

Defendants argue that Plaintiffs do not identify an enterprise distinct from the named Defendants, and do not allege that Defendants did anything more than conduct its own affairs. "A

9

RICO enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 908 (N.D. Ind. 2013) (quoting 18 U.S.C. § 1961(4)). An association-in-fact enterprise must also have some sort of "structure," consisting of "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938, 946 (2009). Plaintiffs have pleaded, in the alternative, both enterprises and association-in-fact enterprises. For each alleged association-in-fact enterprise, Plaintiffs assert that the members acted for a common purpose, that they are related in a way that they are all involved in the operation and management of collections on behalf of Asset Acceptance, and that they possessed sufficient longevity for the members to carry out the purpose. The alleged enterprises also include other entities that are not defendants to this action, such as the "Collection Agency Enterprises" (Filing No. 57, at ECF p. 24) and the "Law Firm Enterprise" (Filing No. 57, at ECF pp. 24-25). Thus the Court finds that Plaintiffs have adequately pleaded the existence of an enterprise in their Amended Complaint.

Contrary to Defendants' argument that Plaintiffs "lump together" all Defendants and only generally refer to "schemes to defraud," thus failing to satisfy the requirements of Rule 9(b), the Court finds that Plaintiffs have pled the remaining requirements of their RICO claim with sufficient specificity. Plaintiffs factually allege the conduct of each Defendant and what role each played in the alleged scheme. (Filing No. 57, at ECF pp. 12-34.) Plaintiffs also include factual allegations of a pattern of racketeering activity, including mail and wire fraud, interstate transportation of stolen property, and extortion. The Amended Complaint contains a chart showing which Defendant and/or its agent engaged in what conduct in furtherance of the alleged scheme to

defraud Plaintiffs.  (Filing No. 57, at ECF pp. 27-31.)  The Court finds that this is more than just a general reference to a "scheme to defraud" and that it adequately states a claim under RICO.  The motion to dismiss Plaintiffs' RICO claim is **DENIED**.

### 2. RICO Conspiracy

Count V is pled in the alternative to Count IV, alleging that some of the Defendants are liable as conspirators under 18 U.S.C. § 1962(d) by conducting or participating, directly or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity.  Defendants argue that this claim fails because Plaintiffs have not specifically alleged the existence of an agreement.  To state a conspiracy claim under RICO, Plaintiffs must plead "facts indicating an act of agreement among the alleged conspirators *or* what roles the various defendants would play in the conspiracy."  *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 785 (7th Cir. 1999) (emphasis added).  As previously discussed, the Amended Complaint states in detail what actions were taken by each Defendant, and the Plaintiffs specifically allege that the "Conspirators intended and *agreed to* further or facilitate the Operators and Managers. . . ." (Filing No. 57, at ECF p. 50).  The Court finds that these allegations satisfy the requirement that Plaintiffs plead an act of agreement and/or the roles the various Defendants played in the alleged conspiracy.  Therefore, Plaintiffs have adequately stated a cause of action under Count V, and the motion to dismiss Plaintiffs' RICO conspiracy claim is **DENIED**.

### E. Counts VI, VII, and VIII: Common Law Fraud, Restitution, and Unjust Enrichment

Count VI alleges claims of common law fraud, Count VII asserts a claim for restitution, and Count VII is a claim of unjust enrichment, all under Indiana common law.  Defendants again argue that Plaintiffs' Amended Complaint fails to meet the heightened pleading standard under Rule 9(b) for these three counts.  As previously discussed, Plaintiffs include detailed factual

allegations as to the actions of each entity, what statements of existing fact were made, to whom, and when. (Filing No. 57, at ECF pp. 27-31.) Therefore, the motion to dismiss Plaintiffs' claims under Counts VI, VII and VIII is **DENIED**.

**F.      Personal Jurisdiction**

Finally, Defendants assert that Plaintiffs' claims must be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction absent a viable RICO claim. Because the Court has determined that Plaintiffs have stated a viable RICO claim, this Court has jurisdiction over Defendants under 18 U.S.C. §§ 1961, 1962(c) & (d) and 1964(c). Therefore, Defendants' motion to dismiss under Rule 12(b)(2) is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss under Rule 12(b)(6) (Filing No. 61) is **GRANTED in part** and **DENIED in part**. Defendants' Motion is **GRANTED** as to Count II of the Amended Complaint for failure to state a claim upon which relief may be granted, and these claims are **DISMISSED with prejudice**. The Motion is **GRANTED** as to Ms. Kuhn, Ms. Casel, and Mr. Strohm on Count III and these claims are **DISMISSED with prejudice** as being untimely. The Motion is **GRANTED** as to Mr. Booker on Count III and his claim is **DISMISSED without prejudice** based upon failure to plead facts showing that he has standing to assert such a claim. The Motion as to Mr. Rogers on Count III is **DENIED**. The Motion to dismiss Counts I, IV, V, VI, VII, and VIII is **DENIED**. Finally, the Motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction (Filing No. 61) is **DENIED**.

SO ORDERED.

Date: 3/31/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Amy E. Romig
PLEWS SHADLEY RACHER & BRAUN
aromig@psrb.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

Matthew D. Boruta
CHEESEBOUROUGH & BORUTA
boruta17@hotmail.com

Robert D. Cheesebourough
ruaneagle@aol.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

Jason L. Santos
HINSHAW & CULBERTSON, LLP
jsantos@hinshawlaw.com

Jennifer Jay Kalas
HINSHAW & CULBERTSON
jkalas@hinshawlaw.com

John Paul Ryan
HINSHAW & CULBERTSON, LLP
jryan@hinshawlaw.com

Katherine H. Tresley
HINSHAW & CULBERTSON LLP
ktresley@hinshawlaw.com